Our final case for this morning is Stephens v. Acting Commissioner of Social Security Nancy Berryhill Mr. Rodman Your honors, may it please the court. My name is Jason Rodman. I represent the appellant Kirk Stephens This is a stage 4 social security case, meaning that the ALJ alleged that the claimant could do his past work And so this case is about obesity, this case is about sleepiness, and it's about minor impairments in combination And it's also time limited, right, to the period between 2010 and 2013 You took the words out of my mouth, your honor. In the last work attempt, excuse me, that's exactly right Initially, the alleged onset date was January 5 of 2007, and then it was amended for procedural reasons to March 31, 2010 However, a close reading of the hearing testimony suggests that the claimant didn't fully have his head around the implications of that Or the implications of the timing that he was testifying to So that plays into the obesity argument, as documented well in the briefing, in terms of the ALJ saying to him That something along the lines of you were lighter then, right, and he affirmed that in fact he was heavier By a real margin over the entire period, as documented in detail in the briefing And that ends up affecting multiple different components, and so that kind of plays into the combination issue So I'm going to come back to that, but jumping ahead for the moment to the sleepiness issue In his last work attempt, which was in 2007, he was falling asleep on the job, and so that's AR 704 And that ended up doing it in for him, and so he testified a lot of times, I'll end up falling asleep throughout the days Several times through the day, approximately that Well look, he has an array of problems, we all can see this from the ALJ's opinion, from your briefs, even the Commissioner's briefs But once you get to step 4, the question is can he do his past work And under the RFC that the ALJ came up with, some of his past work Say the security officer and taxi dispatcher, not taxi driver, where you might have to carry people's suitcases or whatever But taxi dispatcher, the ALJ thinks that he can do, and she does have a whole paragraph over here on page 13 of the opinion Where she's looking at the aggravating effects of the obesity And so, we're on substantial evidence review, what's so far off that you can point to that should impel us to overturn this decision? What's so far off is that the primary crux of the ALJ opinion's analysis Is that the medical opinion cited incorporated obesity automatically when they talk about other things And that's not necessarily true as delineated in the briefing And also in terms of the dispatcher, I believe he hasn't done that job for some time And the relevant period is, and so this comes to the timing, the relevant period is from March 2010 to March 2013 So the ALJ's strongest evidence in terms of obesity isn't from doctors It's from the claimant himself thinking that he was fine or that he was lighter during that time frame And so that plays into the credibility analysis in a couple different ways First off, if the ALJ didn't go to the record and notice that, hey, in fact he was heavier during all this period It suggests that that record wasn't necessarily looked at that closely in the creation of that ALJ opinion But she is looking at what the doctors were saying at the time And as I'm looking at the end of the opinion, she checks with the vocational expert About whether somebody with his capacity could perform the former work And I don't see any reason to think that the vocational expert is unaware of what a taxi dispatcher job And a security officer job is in general She says it's consistent with the DOT, there's a sit-stand option, she's put a few more things in there She gives him the benefit of the doubt because of the obesity She restricts the RFC, she gives him a credibility boost I guess I'm not convinced that she's giving him the benefit of the doubt or any kind of credibility boost in terms of the obesity About pain, she says the obesity does enhance the credibility of his statements of pain Because sometimes, I mean, he has knee problems, right? And so they're probably worse given his weight Well? Counsel, it seems to be throughout her findings And she specifically, and it may not spell it out to your satisfaction But she says with regard to obesity, she talks about exacerbating symptoms That is an acknowledgment of his obesity On the face of it, it would seem to be I think that what we're looking at here today is at some level Whether Brown sort of takes the punch out of Martinez In terms of the obligation to make more than a passing acknowledgement of obesity When you're calling obesity severe And the ALJ in this case does call obesity severe And which in my mind triggers at least along the lines of Brown A good faith attempt to really parse through a bunch of specific ways Especially with all the things this gentleman deals with And dealt with during that relevant time In terms of how that's going to affect his obesity And so for example He had, you know, the chronic And these are actually things the ALJ did not consider severe The chronic kidney disease and incontinence of a couple varieties Combining with obesity It inherently would make breaks longer to clean up, potentially change clothes The whole process more fatiguing The shoulder and hand, I think wrist impairments even Combined with obesity Presumably would affect the use of hands You know, while sitting The leaning forward And sometimes I get the sense that ALJs assess some of this There on hearing day By looking at the way the claimant sort of is able to lean forward Versus not at the table And some of those things As much as, you know, it's their duty not to play doctor And to pay attention to the doctor opinions But in this case I think a close reading of the line of questioning Suggests that the ALJ thinks Even in the opinion Even in the written decision That the claimant was substantially lighter During the relevant period  I mean, I looked at this long list of weights Back here in the back So yeah But I see it as a very relevant mistake And it plays into the sleepiness issue too Because, for instance If it's all about whether he can do his past work or not, right? If he thinks that in 2010 Excuse me, if he thinks that the judge is asking him What he could do in 2007 when he had that last job attempt And he was falling asleep all the time And he thinks, oh, well I guess maybe I could have done that other job I had If you changed it to sit down Which, as my understanding That's what's going on The problem is The relevant time period is March 2010 Three years after the time frame That it's fairly apparent to me He's thinking about when he answers those questions And the gentleman Has, you know, put in time And that last job Arguably he shouldn't have even pushed at working But he has a ninth grade education And I think he was just a little bit confused Okay, well, if you want to save a little bit for rebuttal I will do that, Your Honor, thank you Thank you Mr. O'Dealy Good morning, Your Honors Good morning Judge Wood May it please the court Javed O'Dealy on behalf of the Commissioner In this case The ALJ took the claimant at his word In his testimony That he could, in his view  If they hired him again As he said And I think that's a good point As he put it With certain additional limitations That the ALJ credited and included in the record And she specifically said As Your Honors have mentioned That she was crediting them Because of his obesity Because of the fatigue associated with the obesity And the fact that she believed That the obesity made his pain complaints more credible Opposing counsel Asks the court to find It was unreasonable for the ALJ not to find That he was even more limited Again, the ALJ specifically said That she was taking him at his word And that she was including those limitations In order to account The limitation to 45 minutes at stand option The limitation to sedentary Rather than light work Which is what the state agency doctors The only doctors to opine about his RFC In the record opined There's no treating physician opinion in the record There's nothing to suggest Despite the fact that there are admittedly Many impairments Considered There's nothing to suggest That he is more limited than the ALJ found The ALJ So this is a remand case It was remanded in part because of the obesity It was remanded because the district court The first time around didn't think That the ALJ at that time Which was a different ALJ Took sufficient account of the obesity And sufficiently acknowledged The possibility that obesity Would exacerbate his impairments Was there any responsibility On the part of the ALJ To develop the record Better on this She notes That the claimant's doctors Have not separately reported Any limitations due to obesity Which may be that they just You know, it's the nephrologist The nephrologist is worrying about the kidneys Or it's somebody else It's a pulmonologist Or it's an endocrinologist Worrying about the diabetes And it seems possible That these doctors would say Oh yeah, you know If you're going to ask me about the obesity I can say something about it But she infers from a lack of mention That they've already incorporated it And I wonder if there's a problem with that I don't think so, your honor And the primary reason is this In this case Appellant Had medical insurance Presented by indeed Not the same attorney But the attorney Who is now partnered with the attorney Who is representing him here in court Throughout the record Including sort of at the first ALJ hearing At the second ALJ hearing Now here in this court And appellant never presented A medical source opinion of his own He knew as early as 2010 That the only doctor Doctors who had opined On the issue of his Obesity and light work Without the sit stand option These were agency doctors, right? These were agency doctors, yes Knew at that point And had contemporaneous medical care There's no indication of a lack of medical care Indeed he testified I think on page 698 Of the record That he was part of the healthy Indiana plan Which is I think A medical plan for low income individuals Had medical care throughout Never asked these doctors Or at least the evidence of record To go and ask the ALJ To go procure one So I think at this stage For the court to Sort of impugn the decision Or sort of find that it was unreasonable For the ALJ not to go get one I think is sort of unfair However I would also say that The circumstances under which an ALJ Would go and get additional opinions If she doesn't think That she has enough evidence to decide the case And here she had specific testimony By the claimant That she was able to do this past work With certain concessions That she then included in the RFC As you said Presented to the vocational expert And the vocational expert testified specifically That he thought that An individual with those limitations Would be able to return To the past work as a dispatcher It's true that the dispatcher work Was pretty remote in time In the sense that I believe it was between 1997 and 2000 2000, yeah And the violations Have a 15 year look back period For the purposes of past relevant work It was within that period And it was reasonable for the ALJ Then to rely on the vocational expert's testimony Once she had established a reasoned basis For the RFC And conclude that he could return to that work Opposing counsel Asks the court To find that These impairments and combinations Presumably would affect Appellant's ability To perform work His residual functional capacity But I think the problem is The ALJ found reasonably That he was more limited Than the opinions of record The agency doctor's opinion stated But that he was not more limited Than she found That taking him at his word About what he could do And the fact that he thought He could return to this particular past work With certain concessions I think with respect to the other Sort of granular arguments That counsel makes They're sort of equally unavailing So for example He argues that Dr. Jane's opinion Or Dr. Jane's statement Is an opinion But if you look at it It says if he has hypersomnolence He should not drive That seems conditional As we argue in our brief That's a conditional statement It's not a medical source opinion If you look at 416 972 A2 Which defines That's it Defines medical source opinion It's a statement about The impairments and their limitations Right The severity of impairment The impairment This is not that He could have gotten that But he did not But over and above that Neither job that the ALJ found Appellant to be able to return to Required driving So we believe the error is harmless Even if in fact it is an error And then with respect to The individual impairments That he addresses Urinary incontinence There is no indication That that impairment persisted after To the extent that There was no demonstration That there were limitations Based on that in the sense That no doctor opined limitations But he was treated for it In October of 2011 Less than a year after His revised onset date And by I believe May of the next year Reported that his problems Had resolved And again I think in July Of the next year Reported the problems again Had resolved And in terms of Balancing In the district court It appears that Appellant's counsel mistook The ALJ's decision And thought the ALJ Had limited him to Frequent balancing And made the representation To the court that Occasional balancing was more reasonable That doesn't really matter anyway Does it if we're talking about Taxi dispatcher and security guard Two hours of standing and walking And limiting him to Occasional balancing Which is slightly more than two hours It's about a third of the work day Or two thirds hours But in our view There isn't an inconsistency Because if you look at the SCO The companion to the DOT Which defines these terms Balancing is defined as Maintaining body equilibrium There are all sorts of reasons Why one might be limited But beyond that Neither of the jobs That he was found to be able to return Required balancing of any sort It just was not present For those jobs And then with respect to The upper extremity dysfunction Admittedly he had Carpal metacarpal Or thumb He had surgery He had surgery But by one year later It was found to have resolved He was doing wonderfully The ALJ acknowledged all of this And there is kind of a discrepancy Because at one point in the record One of his doctors Seemed to say that there was Severe crepitus of the right thumb joint But the ALJ I think reasonably Interpreted that as a typo Because nowhere else in the record Was there any indication of Crepitus of the right thumb Nowhere else in the record Was that kind of treatment For the right thumb or the right hand So the ALJ reasonably looked At that evidence and concluded That he had not shown That the record demanded An additional limitation Certainly there was no opinion From a doctor that showed That he needed grasping Or manipulative limitations If the court has no further questions We would ask the court to affirm All right apparently not So thank you very much Thank you I think you've got about a minute Okay at the outset I'm going to go back to Brown Because I know that the goal here today Is to do the right thing by case law As well as the parties I think overall Brown Is an outlier In that it's not standard That you don't really need To have sort of Connect the dots in obesity Brown was almost the exception Because the ALJ there Went to such great lengths To delineate And an example here That's fairly obvious In terms of time and in combination That wasn't even considered Is that obesity was caused by insulin And that's when obesity skyrocketed In 2008 AR 218 to 239 And so that became an ongoing problem Second there were Treating opinions In addition to the one That we've highlighted In our opening brief And that opinion Seemed relevant And it was about functionality And I would submit That there's other Treating opinions About functionality In the opening statement of facts And the footnotes In particularly the reply brief And finally If I might You may finish your sentence This gentleman has an implant In his hand And on the record We ask that you remand All right, thank you very much Thanks to both counsel We'll take the case under advisement And the court will be in recess